DEAL GARDENS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BOARD OF TRUSTEES OF THE VILLAGE OF LOCH ARBOUR, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued November 21, 1966—Decided February 6, 1967.

*Mr. Sam Weiss* argued the cause for appellant (*Mr. Nicholas Martini,* attorney).

*Mr. Harold Feinberg* argued the cause for respondent.

The opinion of the court was delivered by

HANEMAN, J. This is an appeal from a judgment of the Appellate Division affirming a judgment of the Law Division in favor of the Board of Trustees of the Village of Loch Arbour (Loch Arbour). The judgment sustained the validity of a zoning ordinance of said municipality. We granted certification, 47 *N. J.* 575 (1966).

On July 30, 1954 plaintiff acquired title to an unimproved parcel of land in the Village of Loch Arbour consisting of a corner lot of approximately 308 feet on Edgemont Avenue on its southerly side and 115 feet on Ocean Avenue on its westerly side. The easterly and northerly boundaries were respectively 155 and 300 feet in length.

On October 10, 1958 Loch Arbour adopted a zoning ordinance which provided in part as follows:

"Apartment houses, garden apartments, apartment hotels, hotels, boarding houses, municipal buildings, churches, public schools, including playgrounds and accessory buildings, public parks, and public playgrounds may be located in any district.

An application for a permit for uses by classes of districts, as enumerated in this Section (p-1) and (p-2) shall be made first to the Board of Adjustment who shall hear the application in the same manner and under the same procedure is [sic] empowered by law and ordinance to hear cases and make exceptions to the provisions of a zoning ordinance, and the Board of Adjustment may thereafter recommend in writing to the Township Committee that a permit be granted for a use in accordance with the stipulations of this ordinance, if in its judgment the use as it is proposed to be located, will not be detrimental to the health, safety and general welfare of the community and is reasonably necessary for the convenience of the community.

Whereupon the Township Committee may, by resolution, approve or disapprove such recommendation and in case such recommendation shall be approved, the Administrative Officer in charge of granting permits, shall forthwith issue a permit for such structure or use."

Consistent with the above ordinance, plaintiff filed an application with the Board of Adjustment in October 1964 seeking a use permit for a high rise apartment house on the above described premises. The initial hearing on the application was held on December 4, 1964. The matter was then adjourned without date and no further hearing has been held. On January 22, 1965 the 1958 zoning ordinance was amended to the end that only one-family residential buildings and "municipal buildings, parks, playgrounds, and other municipal facilities" were permitted in the municipality. On February 8, 1965 plaintiff instituted an action seeking to set aside Ordinance No. 65 on the ground, among others, that the ordinance was unreasonable, arbitrary and capricious as to the premises in question and as such deprived plaintiff of property rights in violation of the due process clause of the *Fourteenth Amendment* and *Article* I, *Paragraphs* 1 and 20 of the 1947 *Constitution* of the State of New Jersey. On April 30, 1965 during the pendency of that suit, the Village passed Ordinance No. 66, amending and supplementing the previous two zoning ordinances. Ordinance No. 66 divided Loch Arbour into two zones, a business zone and a residential zone.

Plaintiff's lands were placed in the "Residence Zone." Section 2B(2) of said ordinance provides:

"'(2) Within the Residence Zone, no building, structure, enclosure or lot shall be used, and no building, structure or enclosure shall be erected or altered which is intended or designed to be used, in whole or in part, for any other purpose than:
'(a) A single one-family detached dwelling:
'(b) Such municipal buildings, parks, playgrounds, and other municipal facilities as are deemed necessary and appropriate by the governing body of the Village of Loch Arbour.'"

Plaintiff thereupon amended its complaint to add a count attacking the validity of Ordinance No. 66 insofar as it affected its above described lands.

The trial in the Law Division resulted in a judgment for the defendant with the trial court finding that Ordinance No. 66 was not unreasonable, arbitrary or capricious. Since Ordinance No. 66 was upheld the court found no need to reach the merits of Ordinance No. 65.

On appeal, the Appellate Division affirmed in a *per curiam* opinion essentially for the reason set forth in the opinion of the Law Division and added by way of an additional ground to deny relief, relying upon *Fischer v. Township of Bedminster*, 11 *N. J.* 194 (1952), that plaintiff had not exhausted its administrative remedy of making an application to the board of adjustment for a variance.

█ We shall treat first of the Appellate Division's added ground. *Fischer v. Township of Bedminster, supra,* involved an attempt to have an ordinance declared invalid insofar as it affected a single parcel of realty. This Court said at *page* 206:

"If the plaintiff is dissatisfied with the application of the zoning laws to his particular property, he may apply to the board of adjustment for a variance."

In *Conlon v. Board of Public Works, Paterson,* 11 *N. J.* 363 (1953), where a landowner also sought to have a zoning ordi-

nance declared invalid only insofar as it affected his land, this Court said at *page* 370:

"However, when, as here, the zoning ordinance is not claimed to be invalid in its entirety but only to be arbitrary and unreasonable in its application to the owner's land, and relief in that circumstance may be obtained from a local board of adjustment, the trial court should ordinarily decline to adjudicate an attack upon the ordinance until after the owner has exhausted his remedy to seek relief from the local board of adjustment, * * *."

See also *Kozesnik v. Montgomery Twp.*, 24 *N. J.* 154 (1957).

*Conlon, supra,* was in turn refined and explained by *Napierkowski v. Gloucester Twp.*, 29 *N. J.* 481 (1959). The court there said at *page* 489:

"However, the exhaustion principle is modified where it is reasonably apparent that resort to administrative processes would be a fruitless effort. See *Honigfeld v. Byrnes,* 14 *N. J.* 600 (1954); *Kotlarich v. Ramsey,* 51 *N. J. Super.* 520, 539 (*App. Div.* 1958)."

The reason for the conclusion in *Conlon, supra,* was explained in *Kozesnik, supra,* 24 *N. J.,* at *page* 183, where the Court said:

"A distinction was drawn in *Conlon* between an attack upon an ordinance in its entirety and an attack upon some provision of the ordinance or its application to a particular parcel, it being there said that in the former situation there need not be recourse to the administrative remedy but in the latter there must be because a judicial determination of invalidity would leave the parcel wholly unrestricted and permit the owner to put it to any use however incongruous it may be with other uses in the area (11 *N. J.,* at *page* 370)."

In spite of what we said in *Conlon, supra, Napierkowski, supra,* and *Kozesnik, supra,* some confusion seems to persist among the bench and the bar as to whether there is a vital procedural deficiency in a plaintiff's failure to first apply to the zoning board of adjustment for a variance where the attack on a zoning ordinance is limited to its effect on a single parcel of realty. The need for some further explanation is indicated. As stated in *Conlon, supra,* a court should "ordi-

narily" decline to adjudicate the attack upon the ordinance until the owner has exhausted his remedy before the board of adjustment. However, this does not mean that failure to so apply for a variance before resort to an action in lieu of prerogative writ must inevitably result in a dismissal. As noted, where such a course of action would be futile in absence of a prior adjudication of unconstitutionality of the ordinance, it will not be required. Additionally, the failure or refusal of a court to dismiss for failure to have proceeded at the municipal level is not ground for appellate reversal. However, where a plaintiff has failed to take the indicated initial step and has been successful in his *in lieu* proceeding attacking the ordinance, the municipality should be accorded a reasonable opportunity to cure the constitutional invalidity of the ordinance by amendment. The amendment may take the form of a general change of the permitted uses in the area in which the property is located, or of providing that the property shall be dealt with by way of a special exception under *N. J. S. A.* 40:55-39(b) upon a stated standard. That standard may be such as to permit any use which is not unduly discordant with the neighborhood. To permit such amendment, the final judgment should provide for a stay of its operative effect for a reasonable time. In the event of the failure of the municipality to amend within the designated time, the judgment should then become absolute. In this manner the possible chaotic effect on the entire municipality of leaving a single parcel of realty completely unzoned and unrestricted is avoided. See *Kozesnik v. Montgomery Twp., supra,* 24 *N. J.,* at *p.* 183; *Morris County Land, etc. v. Parsippany-Troy Hills Tp.,* 40 *N. J.* 539, 559 (1963).

In the matter *sub judice,* we conclude that an application to the board of adjustment would have been futile particularly in the light of the fact that the ordinance was admittedly a temporary measure which sought to restrict new uses pending the adoption of a final ordinance. Consequently we hold that plaintiff was not required to exhaust its remedy before the board of adjustment.

We proceed to a consideration of the merits of the appeal. Plaintiff argues that "the ordinances at bar are unconstitutionally confiscatory, because their zoning restrictions on the plaintiff's land permit only an economically unfeasible and unlivable residential use, thus forbidding any reasonable utilization of the land."

In its oral argument defendant sought, *inter alia*, to sustain the validity of the questioned ordinance regardless of its effect upon plaintiff's lands, on the ground that it was an interim measure which sought to preserve the *status quo* pending the adoption of a final zoning plan.

That Ordinance 66 partook of the nature of interim zoning is not disputed. In relation to "stop gap" zoning ordinances, this Court said in *Monmouth Lumber Co. v. Ocean Township*, 9 *N. J.* 64 (1952), at *p.* 74:

"The plaintiff's second additional argument is that the defendant township's 1948 ordinance was an invalid exercise of police powers under the zoning statutes because it was 'freezing' or 'stop gap' legislation adopted to permit delay in preparation of additional zoning legislation. In the case at hand the 1948 ordinance was enacted by the governing body of the defendant township in April, 1948, following recommendations made by the planning board, after preliminary survey and study. Such action is within the intent and purpose of the statutes relating to planning, *R. S.* 40:55–1 *et seq.*, particularly in view of the constitutional and legislative mandates (*N. J. Const.* 1947, *art.* IV, *sec.* VII, *par.* 11, *supra*, and *R. S.* 40:55–2, *supra*) that such laws as these shall be construed 'most favorably to municipalities.' It is entirely consistent with the theory of planning to provide, after study of the conditions of the community, a means of preventing changes in the character thereof which might be opposed to the theory of planning and zoning pending the formulation of a detailed and complete 'comprehensive plan' for the municipality, either new or in substitution for an outmoded plan. Therefore we hold that the 1948 ordinance was validly enacted."

See also *Deerfield Realty Co. v. Hague*, 8 *N. J. Misc.* 637, 151 *A.* 373 (*Sup. Ct.* 1930); *Glen Rock, etc. v. Bd. of Adjust., etc., Glen Rock*, 80 *N. J. Super.* 79 (*App. Div.* 1963); *Rockaway Estates v. Rockaway Tp.*, 38 *N. J. Super.* 468 (*App. Div.* 1955); *Campana v. Clark Tp.*, 82 *N. J. Super.* 392 (*Law Div.* 1964).

Although the municipality may adopt a "stop gap" zoning ordinance, which if not temporary might be considered unconstitutional, such power is strictly limited and must be exercised with great caution. One of the more dangerous aspects of this type of legislation, arises from the damage which may result if there is no restriction of the period of time during which a restraint against some land use is permitted to continue. Plainly there must be some terminal point. It is impossible to establish an inflexible rule applicable to every case. Each situation must be assayed in its own particular factual setting to ascertain whether the elapsed time during which the ordinance has been in effect is reasonable. See 9 *Rutgers L. Rev.* 700 (1954–1955).

Here the time which has elapsed since the adoption of the ordinance was more than sufficient to permit the substitution of a complete and final ordinance. The sole excuse advanced by defendant was the inability to obtain federal funds for a planning and zoning survey of the municipality and the preparation of permanent zoning restrictions. We consider this explanation as an inadequate reason for the failure to finally act and hence will not sustain the validity of the ordinance on that ground.

In upholding Ordinance 66 the trial court stated:

"Plaintiff's contention [is] that the ordinance is confiscatory in that it restricts the use of its land to economically unfeasible and inappropriate uses while forbidding a practical utilization. The statutory test applicable is not whether the ordinance encourages the most appropriate use of plaintiff's lands but whether it encourages 'the most appropriate use of land throughout the municipality,' considering the character of the district and its peculiar suitability for particular uses with a view to conserving the value of property for such use. *Guaclides v. Borough of Englewood Cliffs, supra,* at 415.

\*    \*    \*    \*    \*    \*    \*    \*

The officials had a right to maintain the single-family residential characteristics. They had the right, if not the duty, to adopt legislation to maintain and preserve the Village's characteristics and pattern."

But, as stated in the pretrial order, the constitutionality of the ordinance is challenged on the ground that it, "forbids the

practical utilization of plaintiff's property and in effect confiscates the same." Plaintiff does not contend that the ordinance is unreasonable because it does not allow plaintiff's land to be put to the most profitable use. Rather, plaintiff contends that it cannot put its land to any practical use. It is upon this contention that the outcome must turn. The record discloses some confusion on the part of counsel and the court as to what was in question. See *Morris County Land, etc. v. Parsippany-Troy Hills Tp., supra,* 40 *N. J.,* at *p.* 557. Since the court made no finding on this specific issue, the matter will be remanded for that purpose and for the taking of any additional testimony that either counsel may deem necessary.

Remanded for further proceedings consistent with the foregoing.

HALL, J., concurring in result.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*Opposed* — None.