119 N.J. Super. 572 (1972)
293 A.2d 192
MEADOWLAND REGIONAL DEVELOPMENT AGENCY, et als., PLAINTIFFS-APPELLANTS,
v.
HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, et als., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1972.
Decided June 26, 1972.
*573 Before Judges SULLIVAN, LEONARD and CARTON.
Mr. Alfred A. Porro, Jr. argued the cause for appellants (Messrs. Porro, Flynn & Murray, attorneys).
Mr. David S. Litwin, Deputy Attorney General, argued the cause for respondents (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
This appeal involves the constitutionality of certain temporary zoning regulations adopted by the Hackensack Meadowlands Development Commission which placed a "freeze" on the use of 10,000 acres of land in the Hackensack Meadowlands.
The Meadowlands Commission was created by the New Jersey Legislature in 1968 for the purpose of overseeing the orderly development of the Meadowlands (N.J.S.A. 13:17-1 et seq.). The Commission was empowered to prepare and adopt "a master plan or portion thereof for the physical development of all lands lying within the district, which plan may include proposals for various stages in the future development of the district." N.J.S.A. 13:17-9.
The constitutionality of that act was upheld in Meadowlands Regional Development Agency v. State, 112 N.J. Super. 89, 122-124 (Ch. Div. 1970). That case is now before the New Jersey Supreme Court.
*574 The Commission, in 1969, proposed resolutions establishing interim zoning regulations and other land use controls for the Meadowlands District. It then submitted these resolutions, as required by the act, to the Hackensack Meadowlands Committee, consisting of the mayor or chief executive or his designated representative of each of the 14 municipalities which include within their borders lands of the District. The Committee unanimously rejected these resolutions. However, on April 23, 1970 the Commission overrode the Committee's rejection and adopted the resolutions.
The Commission explained its adoption of the interim zoning and first stage master plan as opposed to a final plan on the following basis:
In the Declaration and Purpose of the Meadowlands Act, the New Jersey Legislature declares that comprehensive development of the Meadowlands "can no longer be deferred," and expresses fear that the "incalculable opportunity for new jobs, homes and recreational sites" represented by the Meadowlands "may be lost to the State through piecemeal and unplanned development." The rapid deterioration of the physical environment of the Meadowlands and the growing threat that disorganized patterns of development there might soon become irreversible explain the Legislature's evident intent that the Commission adopt and commence the implementation of a Master Plan for the Meadowlands District at the earliest possible moment.
The preparation of a Master Plan containing the components enumerated in the Meadowlands Act cannot be accomplished in a short time. Comprehensive studies have to be undertaken to enable the Commission to plan intelligently and effectively with respect to each of these components. The resources, contributions and requirements of the constituent municipalities, the State, and appropriate federal agencies must be identified and coordinated. Recognizing that the Commission would be unable to prepare a definitive Master Plan immediately after its creation, the Legislature expressly authorized it to adopt the Master Plan in portions and stressed that the Plan "may include proposals for various stages in the future development of the district." In accordance with this authorization, the Commission has decided to adopt the Master Plan in stages. By this means it seeks both to comply with the Legislature's direction to commence regulation of development within the Meadowlands as soon as possible, and to avoid the dangers inherent in the adoption of an ill-conceived or poorly coordinated Master Plan.
*575 The present appeal deals with the interim zoning regulations relating to the establishment of "Planning Areas" within the District. These areas comprise some 10,000 acres in the District which allegedly are still so substantially undeveloped or free of a definite pattern of development as to allow for alternate uses of the land. Other areas of the District, described as "Development Areas," are more highly developed and in the Commission's view are not available for other uses.
The interim zoning regulations permit the following uses within the Planning Areas: (A) any use of land not involving the construction, use or occupancy of structures or buildings; (B) certain temporary uses as described in the resolution; (C) any use of existing but unused buildings or structures terminating within two years from the effective date of the resolution and complying with certain performance standards; and (D) signs, in accordance with conditions set forth in the resolution.
The following general uses are permitted subject to certain conditions and controls: Christmas tree sales in certain districts for a period not to exceed 60 days; contractor's office and equipment sheds; real estate offices; carnivals or circuses in specified districts for periods not exceeding three weeks; and promotional activities of retail merchants involving outside display of goods and merchandise for specified periods and under certain specified conditions.
Appellant Meadowland Regional Development Agency brought a declaratory judgment action in the Law Division seeking to declare the interim zoning regulations to be unconstitutional as constituting a taking of property without due process of law. The action was transferred to this court since it embodies a challenge to the validity of rules of a State agency.
At the outset, it should be pointed out that we are concerned here only with temporary or interim zoning regulations. The original resolutions, by their terms, were to operate *576 for a period of two years and expired May 1, 1972. That termination date was extended by resolution of the Commission for an additional period not to exceed 60 days, that is, July 1, 1972.
The Supreme Court has approved freeze or interim zoning regulations under certain conditions. As the court said in Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64 (1952),
* * * It is entirely consistent with the theory of planning to provide, after study of the conditions of the community, a means of preventing changes in the character thereof which might be opposed to the theory of planning and zoning pending the formulation of a detailed and complete "comprehensive plan" for the municipality, either new or in substitution for an outmoded plan. * * * [at 75]
Where the interim zoning regulations, by reason of their longevity, would impose too great a burden on the owners of the properties being regulated, such regulations have been struck down. Deal Gardens, Inc. v. Board of Trustees of Loch Arbour, 48 N.J. 492 (1967).
In Campana v. Clark Tp., 82 N.J. Super. 392 (Law Div. 1964), a case which was cited favorably in Deal Gardens, supra, it was held that a period of 31 months during which an interim zoning ordinance was in effect was not an unreasonable period under the circumstances there involved. The court in that case observed that the mere passage of time is not the sole determining factor of reasonableness and that it was necessary to look to the progress of the study, its nearness to completion and the prospects for passage of a new zoning ordinance. Although the court recognized the duty of protecting the rights of individual owners, it held that there was also a duty to the community as a whole not to thwart reasonable efforts to adjust land use to modern trends.
The court in Deal Gardens, supra, noted that it was impossible to establish an inflexible rule when dealing with interim zoning regulations. "Each situation must be assayed *577 in its own particular factual setting to ascertain whether the elapsed time during which the ordinance has been in effect is reasonable." 48 N.J. at 500.
Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp., 40 N.J. 539 (1963), which was decided before Deal Gardens, supra, does not condemn interim zoning ordinances of the kind here involved. In that case a township ordinance greatly restricted use of certain swamplands with the objective of preserving them in their natural state and to use them at least partially as a flood control basin. The court held that the ordinance constituted a taking of land for public purposes without just compensation. The court pointed out that "stop-gap" or freezing regulations which had been enacted with the expectation or hope that a higher governmental authority might acquire the area were superseded by the permanent zoning ordinance which the court declared was unreasonably restrictive and confiscatory. The court did not pass upon the validity of the "stop-gap" ordinance.
The scheme envisioned by the Legislature for development of the meadowlands area is a unique one. It contemplates an imaginative and innovative approach to the solution of numerous and difficult problems. The Commission to which that task has been assigned is entitled to reasonable time to study them and to devise methods to resolve them. The nature of the meadowlands area, the vast potential it has in the public interest, the dangers of a too rapid decision and the consequences of a hastily and improperly drawn final plan underscore the necessity for a very careful study of the entire environmental impact of the final plan and possible alternatives thereto. We conclude that the two-year period provided in the original interim zoning regulations and the additional two-month extension thereof are not unreasonable under the circumstances shown by this record. We express no opinion as to whether, for any reason, such regulation may be further extended.
*578 We see no merit in the additional contention advanced by appellant that even if the interim freeze regulations be held legal, the State must pay compensation for the period of the interim regulations because of the very limited uses allowed under the resolution. Lomarch Corp. v. Mayor, etc. Englewood, 51 N.J. 108 (1968), upon which the appellant relies, is not applicable to the present situation. The court held in that case that there was an implied obligation on the part of the municipality to pay compensation for land reserved for a one-year period under the option clause of the Official Map Act, N.J.S.A. 40:55-1.32 and 40:55-1.38. In effect, the court held that the reservation to use the land for public purposes amounted to an option to purchase for which the owner was entitled to payment.
The interim regulations adopted by the Commission in this case are in no way indicative of a plan to acquire any of the property or to obtain an option for its purchase in the future. Their purpose is simply to allow the agency sufficient time to prepare a comprehensive scheme for the development of the district in the interest of both the public and the various property owners.
We see no merit to the further argument that the interim regulations constitute a denial of equal protection because they deal exclusively with planning areas. Suffice it to say that there is a rational basis in fact for treating the planning areas differently.
Affirmed.