SCHIAVONE CONSTRUCTION CO. AND SCHIAVONE NORTH BERGEN REALTY, I, INC., APPELLANTS, v. HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, RESPONDENT.

Argued October 22, 1984—Decided January 21, 1985.

*Theodore W. Geiser* argued the cause for appellants (*Connell, Foley & Geiser,* attorneys).

*Mary C. Jacobson,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Steven R. Gray,* Deputy Attorney General, on the brief).

PER CURIAM.

In this case a moratorium on real estate development was imposed by defendant, Hackensack Meadowlands Development

Commission ("HMDC"), for the purpose of completing studies to determine the feasibility of a food distribution center. The moratorium, covering about 550 acres of meadowlands, included approximately 115 acres of undeveloped land owned by plaintiffs, Schiavone Construction Co. and Schiavone North Bergen Realty, I, Inc. ("Schiavone").

Schiavone challenged the moratorium in the Appellate Division on the grounds that the bar on development and construction effected an unconstitutional taking, was *ultra vires* and violative of the land use statute, and was arbitrary and capricious. The Appellate Division rejected Schiavone's claims. Subsequent to the Appellate Division decision, HMDC extended the moratorium on several occasions, and it was in effect when the case was argued before us. Following oral argument the moratorium was terminated. Schiavone now claims that the subsequent extensions refute the basis upon which the Appellate Division upheld the constitutionality of the HMDC action. It argues, further, that the recent termination of the moratorium at most affects damages but does not render the taking constitutional.

We now determine that the case should be remanded for further proceedings to be undertaken in the Superior Court, Law Division. We decline to undertake further review on the merits of the issues presented at this time because the factual basis upon which the Appellate Division relied has substantially changed since the date of that court's decision. The underlying record is not sufficiently settled for purposes of appellate review and, in addition to the issues raised initially on this appeal, there may be other issues to be resolved in light of the subsequent events. In order to guide the court and the parties on remand, and to explicate our decision, we note several matters.

I

The HMDC is empowered under *N.J.S.A.* 13:17–1 to –86 to oversee the coordinated development of approximately 21,000

acres of marshland located through 14 municipalities in northern New Jersey. In 1977, a United States Department of Agriculture study indicated that a portion of the meadowlands area might be suitable for a food distribution center. In October 1979, following a preliminary investigation, the HMDC concluded that a comprehensive study was necessary to evaluate the feasibility of constructing such a food center.

In March 1982, in order to proceed with its own construction plans affecting some of its property in the meadowlands, Schiavone applied to the HMDC for a zoning certificate seeking a use and bulk variance. While the disposition of this zoning application was pending, the HMDC applied to the United States Department of Commerce for a grant to be used for a development design analysis of the food center. On December 22, 1982, the HMDC granted Schiavone's bulk and use variance. Soon thereafter, the HMDC received the funds it had requested to conduct its comprehensive study.

In April 1983, the HMDC adopted a resolution authorizing a feasibility study for the proposed food distribution center and directing that all development applications be held in abeyance until the agency's next regular monthly meeting. Pursuant to this resolution, action on Schiavone's application was withheld. Thereafter subsequent resolutions were adopted, the purpose of which was to enable the HMDC to complete its feasibility study and the net effect of which was to place a freeze on all land development in the covered area. The HMDC then anticipated that the study would be completed by November 1, 1983. On July 18, 1983, the Legislature enacted a statute, *L.* 1983, *c.* 272; *N.J.S.A.* 13:17A-1 to -45, which authorized the creation of a new agency, the Hackensack Meadowlands Food Distribution Center Commission, to be responsible for implementing the food center project, if the HMDC made a favorable recommendation of the project to the Governor before January 1, 1984.

Schiavone filed a notice of appeal in August 1983 challenging the temporary development moratorium imposed by the HMDC.

In November 1983, the Appellate Division upheld the HMDC moratorium, finding it reasonable under the circumstances. The court anticipated a relatively short duration for the moratorium. It also noted that Schiavone's pending application for a zoning certificate was incomplete. The court then concluded that Schiavone had not been, and would not be, deprived of any substantial benefit of its wholly undeveloped property. Schiavone appealed that decision to this Court under Rule 2:2–1(a), asserting a constitutional question.

Subsequent to the Appellate Division's decision, the HMDC, in December 1983, completed its feasibility study and recommended to the Governor a particular 350 acre parcel as the most appropriate location for the project. According to the HMDC, the Governor requested that the agency extend the moratorium for an additional 60 days to facilitate the final phase of planning, including a financial and marketability evaluation. At its December 1983 meeting, the HMDC extended the moratorium until February 1984. The Governor then established the Hackensack Meadowlands Food Distribution Center Commission to complete the final planning phase, pursuant to *N.J.S.A.* 13:17A–1. The HMDC later extended the moratorium for six more months, until the August 1984 meeting, to allow the completion of financial reports. At the meeting of August 1984, the HMDC again extended the moratorium. This extension was in effect when the matter was argued before the Court in October 1984. On November 26, 1984, following oral argument, the HMDC terminated the moratorium. Thus, the restrictions effected by the moratorium lasted for 19 months, from April 1983 to November 1984.

II

Schiavone argued before us, as it did before the Appellate Division, that the HMDC lacks the express power to have imposed this moratorium on land development. Specifically, Schiavone notes that *N.J.S.A.* 13:17–6(*o*) and (v) limit the pow-

ers of the HMDC to those "expressly given" or "authorized" by the act. Since the power to impose a moratorium is not expressly given or authorized, according to Schiavone, the freeze is *ultra vires.* Schiavone also asserts that the moratorium violates provisions of the Municipal Land Use Act, *N.J.S.A.* 40:55D-90(a). The Attorney General disputed each of Schiavone's contentions and, further, now suggests that these statutory claims are moot because the moratorium has been terminated.

We have decided to refrain from the adjudication of these claims pending further proceedings upon remand. Consequently, the Appellate Division rulings on these statutory issues shall remain the law of the case. If Schiavone is aggrieved by any adverse judgment as to any issues to be tried on remand, it shall have the right, of course, to pursue an appeal and thereby seek review of its contentions that the actions of the HMDC are contrary to operative statutes.

### III

The major issue that brought this appeal before us is whether the actions of the HMDC effected a restraint upon the development of Schiavone's land that constitutes a public taking of property for which just compensation must be paid. When presented to the Appellate Division, the restraints had lasted for approximately eight months. When we heard oral argument, the restraints had been continued in effect for an additional ten months. Upon its ultimate termination, the entire period of the freeze had lasted for approximately 19 months. We were asked to consider whether a compensable taking occurred under these evolving circumstances.

We observe, preliminarily, that a compensable taking can occur when governmental action substantially destroys the beneficial use of private property. Restrictions on land use short of total appropriation, if sufficiently extensive and prolonged, may constitute a taking. *E.g., Washington Market Enterprises v. Trenton,* 68 *N.J.* 107 (1975); *Lomarch Corp. v.*

*Mayor of Englewood,* 51 *N.J.* 108 (1968); *Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp.,* 40 *N.J.* 539 (1963). Whether such restrictions upon the development of land, as opposed to outright appropriation, constitute a compensable taking usually turns on the particular facts of each case. *E.g., Meadowland Regional Development Agency v. HMDC,* 119 *N.J.Super.* 572 (App.Div.), certif. den., 62 *N.J.* 72 (1972); *East Rutherford Ind. Park v. State,* 119 *N.J.Super.* 352, 363 (Law Div. 1972), citing *Pennsylvania Coal Co. v. Mahon,* 260 *U.S.* 393, 43 *S.Ct.* 158, 67 *L.Ed.* 322 (1922).

In this case, the nature of the restrictions upon Schiavone's property are reflected in the resolutions passed by the HMDC. These, as noted, authorized the HMDC to hold in abeyance or deny without prejudice all pending and completed applications seeking to develop property within the area designated for the proposed food center. Facially, the resolutions barred the development of the corporate headquarters Schiavone wished to construct, as well as any other development. The record, however, does not disclose the actual impact of these restrictive conditions upon Schiavone's use and enjoyment of its property or their impact on the market value of the property.

When evaluating temporary land use restrictions, courts should consider the reasonableness of the duration of any moratorium on development. In *Deal Gardens v. Loch Arbour,* 48 *N.J.* 492 (1967), the Court said:

> Although the municipality may adopt a "stop gap" zoning ordinance, which if not temporary might be considered unconstitutional, such power is strictly limited and must be exercised with great caution. One of the more dangerous aspects of this type of legislation arises from the damage which may result if there is no restriction of the period of time during which a restraint against some land use is permitted to continue. Plainly there must be some terminal point. It is impossible to establish an inflexible rule applicable to every cause. Each situation must be assayed in its own particular factual setting to ascertain whether the elapsed time during which the ordinance has been in effect is reasonable. *See* 9 *Rutgers L.Rev.* 700 (1954–1955).
>
> [*Id.* at 500.]

*See also East Rutherford, supra; Meadowland Regional Development v. HMDC, supra; Cappture Realty Corp. v. Board of*

*Adjustment, Elmwood Park,* 126 *N.J.Super.* 200 (Law Div.1973), aff'd, 133 *N.J.Super.* 216 (App.Div.1975). One factor bearing upon the reasonableness of the HMDC's action in this case may be the relationship between the purpose of the restrictions and the time required to reach and to implement a final decision as to the ultimate use of the property. The record does not presently enable us to consider this relationship.

The facts now reveal the inaccuracy of the Appellate Division's assumption that the moratorium would last for only eight months. As noted, subsequent events have witnessed the extension of the moratorium for a 19-month period. There may well be additional factual matters relevant to the question of whether a taking has occurred, which should appropriately be developed in a suitable forum. Moreover, the amount of just compensation, if any, may be implicated in the proofs touching upon the extent of the deprivation of beneficial use and the adverse economic impact on property value. In sum, the parties should be given an adequate opportunity to marshall evidence and to support their respective positions.

■ Although the matter was originally brought in the Appellate Division as an appeal from the final action of a state administrative agency, *see R.* 2:2–3, the case should be returned not to the Appellate Division but to the Superior Court, Law Division. The Eminent Domain Act of 1971 governs all condemnation cases. *N.J.S.A.* 20:3–4. This includes cases for inverse condemnation. *See In re Jersey Central Power and Light Co.,* 166 *N.J.Super.* 540, 544 (App.Div.1979). *N.J.S.A.* 20:3–5 provides:

> The court shall have jurisdiction of all matters in condemnation, and all matters incidental thereto and arising therefrom, including, but without limiting the generality of the foregoing, jurisdiction to determine the authority to exercise the power of eminent domain, to compel the exercise of such power, to fix and determine the compensation to be paid and the parties entitled thereto, and to determine title to all property affected by the action.

The reference in the statute is to the Superior Court, Law Division. *N.J.S.A.* 20:3–2(e). As the Appellate Division recognized in *Orleans Builders & Developers v. Byrne,* 186 *N.J.Su-*

*per.* 432, 446 (App.Div.1982), "[j]urisdiction in inverse condemnation proceedings should be in the Law Division ... where a factual record can be developed."

As noted, the outstanding issue in this case is whether a taking of property has occurred. The additional issue relating to just compensation may also have to be addressed. Facts must be adduced in resolving both issues. Consequently, the case should be considered as one seeking just compensation based on the doctrine of inverse condemnations, properly to be litigated at the trial level.

Accordingly, the matter is remanded to the Superior Court, Law Division, for further proceedings consistent with the opinion. We do not retain jurisdiction. No costs.

*For remandment*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.