271 N.J. Super. 294 (1994)
638 A.2d 866
THOMAS PATZAU, JAMES MCKELVEY, ROBERT STAHL, HENRY JABLONSKI, DONALD CONOVER, LOUIS CONOVER, HARRY CAMPBELL, JOHN ZIMMERMAN, MARY HELEN RICHARDSON, HARRY RICHARDSON AND MARY C. RICHARDSON, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION, SOMERSET AIR SERVICE, INC., SOLBERG AVIATION CO., INC., TOWNSHIP OF READINGTON, TOWNSHIP OF BRANCHBURG, TOWNSHIP OF BEDMINSTER, SKY MANOR AIRPORT, A NEW JERSEY CORP., AND ALEXANDRIA TOWNSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1993.
Decided March 9, 1994.
*297 Before Judges DREIER, BROCHIN and KLEINER.
*298 Sanford E. Chernin argued the cause for appellants.
Anthony T. Drollas, Jr., Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (Fred DeVesa, Acting Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, and John M. Van Dalen, Senior Deputy Attorney General, of counsel; Mr. Drollas, on the brief).
No other parties participated in this appeal.
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiffs filed suit in the Law Division against the New Jersey Department of Transportation, the municipalities of Branchburg, Bedminster, Readington and Alexandria, New Jersey, and the operators of several airports in or adjacent to those municipalities, Alleging that they own property in the defendant municipalities, plaintiffs seek a declaratory judgment that the Air Safety and Hazardous Zoning Act of 1983, N.J.S.A. 6:1-80 to -88, and the New Jersey Airport Safety Act of 1983, N.J.S.A. 6:1-89 to -97,[1] are unconstitutional, and that their enactment and the promulgation of regulations to implement them constitute an impermissible taking of private property for public use without just compensation.
During the course of the litigation, the Department of Transportation moved before the Law Division to transfer the case to this court. The Law Division denied the motion, and the Department of Transportation applied to our court for leave to appeal and for a stay of discovery pending appeal. We denied both motions. The Department then moved before the Supreme Court for leave to *299 appeal the denial of the transfer motion and for a stay pending appeal. The Supreme Court denied the motions, but directed that "the Law Division shall consider the facial challenge to the constitutionality of N.J.S.A. 6:1-89, et seq., prior to discovery regarding and consideration of any other issues raised in the litigation."
In accordance with the Court's direction, plaintiffs moved before the Law Division for a summary judgment declaring the Acts facially unconstitutional. The trial court held that the Acts were not facially unconstitutional and denied their motion in an extensive opinion read into the record. The Department of Transportation then moved to dismiss the complaint or, alternatively, for summary judgment. In substance its argument was that since the court had rejected plaintiffs' contention that the Acts were facially unconstitutional, plaintiffs' only remaining argument was that the Acts were unconstitutional as applied. Since the Acts have not yet been applied to the plaintiffs, the constitutionality of the Acts as applied cannot yet be determined. The Law Division agreed, relying on Lucas v. South Carolina Coastal Council, 505 U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In a second detailed opinion on the record, it granted summary judgment dismissing the action with prejudice for the "basic reason ... that this matter is simply not ripe for adjudication."
Plaintiffs appeal from the judgment of dismissal. They argue before us, as they did before the Law Division, that the Air Safety and Hazardous Zoning Act of 1983, N.J.S.A. 6:1-80 to -88, and the New Jersey Airport Safety Act of 1983, N.J.S.A. 6:1-89 to -97 are unconstitutional both facially and as applied to them.

-I-

The Air Safety and Zoning Act of 1983 and Relevant Regulations
The Air Safety and Hazardous Zoning Act of 1983 defines an "airport hazard" as "(1) any use of land or water, or both, which creates a dangerous condition for persons or property in or about *300 an airport or aircraft during landing or taking-off at an airport, or (2) any structure or tree which obstructs the air space required for the flight of aircraft in landing or taking-off at an airport." N.J.S.A. 6:1-82b. It defines an "airport safety zone" as "any area of land or water, or both upon which an airport hazard might be created or established, if not prevented as provided in this supplementary act." N.J.S.A. 6:1-82c. The Act directs the Commissioner of Transportation to "adopt rules and regulations which delineate airport safety zones for all airports subject to this amendatory and supplementary act," N.J.S.A. 6:1-83, and to adopt rules and regulations "promulgating standards which specify permitted and prohibited land uses, including the specification of the height to which structures may be erected and trees allowed to grow, within airport safety zones." N.J.S.A. 6:1-84. The Commissioner's authority to promulgate these rules and regulations is subject to the statutory caveat that "No standard adopted ... shall be construed to require the removal, lowering or other change or alteration of any structure or tree not conforming to the standard when adopted or amended, or otherwise interfere with the continuance of any nonconforming use," N.J.S.A. 6:1-84, unless the structure, tree or nonconforming use is purchased or acquired by condemnation. N.J.S.A. 6:1-88. The Commissioner is also authorized to permit the creation of a non-conforming use at the request of the municipality in which it would be located. N.J.S.A. 6:1-86. Every municipality which has an airport safety zone within its boundaries is required to adopt an ordinance incorporating the standards promulgated by the Commissioner of Transportation and providing for their enforcement, N.J.S.A. 6:1-85, and to "notify, in writing, each owner of record of property located within an airport safety zone of the boundaries of the airport safety zone," N.J.S.A. 6:1-85.1a. Every New Jersey realtor must notify a prospective buyer of real estate if the property to be purchased is within an airport safety zone. N.J.S.A. 6:1-85.2.
N.J.A.C. 16:62-1.1 defines various terms used in the regulations; in general, the definitions paraphrase those in the statute itself. *301 "Airport hazard area"[2] is defined as "any area.... upon which an airport hazard might be created or established if not prevented as provided by this chapter." "Airport hazard" is defined, in substance, as "any use of land or water," including use of the site for any tree or man-made structure, which creates a condition that would be dangerous for persons or property on the ground or for aircraft taking off or landing at the airport.
N.J.A.C. 16:62-5.1 enumerates the uses which are permitted in an airport hazard area and in the "clear zones," "runway end subzones" and "runway subzones" which are encompassed within an airport hazard area. An airport hazard area consists of a runway subzone, two runway end subzones, and two clear zones. N.J.A.C. 16:62-3.2(b). A clear zone is an area of approximately eight acres at each end of a runway. N.J.A.C. 16:62-3.5 defines a "clear zone" as an area, trapezoidal in shape, the two parallel sides of which would be perpendicular to and bisected by a continuation of the center line of the runway; one parallel side of the trapezoid, located adjacent to the end of the runway, is 250 feet in length; the other parallel side, located 1000 feet beyond the end of the runway, is 450 feet in length.
N.J.A.C. 16:62-22 presents sketches of a "runway subzone" and of a "runway end subzone." These are areas within an airport hazard zone which are larger than, and which encompass, the clear zones. A "runway subzone" is, in general terms, an area bisected by a runway, rectangular in shape, 2350 feet in width, and either the same length as the runway or somewhat shorter. N.J.A.C. 16:62-3.3. "Runway end subzones" are, in general terms, trapezoidal areas, beginning at each end of a runway and extending 3000 feet beyond the end of the runway; the base of the trapezoid adjacent to the end of the runway is 2350 feet in width; the *302 parallel base of the trapezoid farther from the end of the runway is 850 feet in width. N.J.A.C. 62:3-4.
Any part of an airport hazard area, except a "clear zone," may be used for residential, single family dwelling units situated on at least three acres of land, for open space, agriculture, transportation, an airport, and commercial and industrial uses. N.J.A.C. 16:62-5.1. The only uses permitted in any part of an airport hazard area which are prohibited in a runway end subzone are "above ground bulk tank storage of flammable or toxic gases and liquids;" "uses that may attract massing birds, including land fills;" and "above grade major utility transmission lines and/or mains." N.J.A.C. 16:62-5.1. Outside the clear zone, no uses permitted in any part of a hazard zone are prohibited in a runway subzone. However, a structure within a runway subzone is subject to restriction on its height above the level of the runway; the permitted height increases with distance from the runway. N.J.A.C. 16:62-4.2. No new structure or tree will be permitted in a clear zone without a special permit from the Commissioner of Transportation. N.J.A.C. 16:62-5.1. Any existing structure within a clear zone is either a nonconforming use or, if permitted by the municipality, a conditional use. N.J.A.C. 16:62-9.1. The Commissioner of Transportation may issue permits "for creation or establishment of a nonconforming use or vertical height development within an airport hazard area upon determination that ... [t]he creation of the prohibited land use or vertical height development will not in fact create an additional airport hazard limiting the size of the area available for landing, taking-off and maneuvering of aircraft." N.J.A.C. 16:62-6.1(a)3.

-II-

Facial Constitutionality of the Air Safety And Zoning Act of 1983
Almost seventy years ago, in Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the United States Supreme Court sustained the constitutionality of the City of *303 Euclid's zoning ordinance. In upholding the ordinance, the Court said:
Until recent years, urban life was comparatively simple; but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable.
Too much time has gone by since Euclid, and zoning is too universally accepted, for us to have to cite cases to justify our rejecting the argument that the Air Safety and Hazardous Zoning Act of 1983 is unconstitutional because it is an exercise of the zoning power. Nor is the statute vulnerable because it provides for the State to zone in conjunction with the affected municipalities. Although most zoning power in New Jersey is exercised by local governments to which it has been delegated by statute pursuant to Article IV, § 6, ¶ 2 of the New Jersey Constitution, zoning is an exercise of the police power and the Legislature may also delegate it to state agencies. In re Egg Harbor Associates, 94 N.J. 358, 366, 464 A.2d 1115 (1983); Toms River Affiliates v. Department of Envt. Protection, 140 N.J. Super. 135, 146, 355 A.2d 679 (App.Div.), certif. denied, 71 N.J. 345, 364 A.2d 1077 (1976); cf. Pascack Ass'n, Ltd. v. Mayor & Council of Township of Washington, 74 N.J. 470, 483-84, 379 A.2d 6 (1977); Meadowlands Regional Dev. Agency v. State, 112 N.J. Super. 89, 122-24, 270 A.2d 418 (Ch.Div. 1970), aff'd, 63 N.J. 35, 304 A.2d 545 appeal dismissed, 414 U.S. 991, 94 S.Ct. 343, 38 L.Ed.2d 230 (1973).
The constitutionality of the zoning statute at issue here cannot be successfully attacked on the ground that it lacks a rational relationship to a justifiable legislative purpose. Cf. Home Builders League of S. Jersey, Inc. v. Township of Berlin, 81 N.J. 127, 137, 405 A.2d 381 (1979) (requirement for minimum floor area independent of number of occupants held unconstitutional because *304 requirement was unrelated to legitimate zoning purposes). It was enacted to prevent "the creation or establishment of airport hazards" that "endanger[] the lives and property of the users of the airport and of occupants of land in the vicinity thereof, and also, if the hazard is of the obstruction type, ... tend to destroy or impair the utility of the airport and the public benefit therein." N.J.S.A. 6:1-80 (Legislative findings and declarations). Controlling the use of property in the immediate vicinity of airports in order to prevent the creation of new obstructions to aircraft certainly is not arbitrary or unreasonable on its face.
Plaintiffs appear to rely on Yara Eng'g. Corp. v. City of Newark, 132 N.J.L. 370, 40 A.2d 559 (Sup.Ct. 1945), to support a contrary contention. In that case, the former Supreme Court invalidated a Newark ordinance which sought to protect Newark airport by declaring the area within two miles of the landing field to be "airport approach zones" and "airport turning zones" within which any structures or trees of greater than stated heights and any radio or electrical apparatus that would interfere with arriving or departing aircraft were prohibited. However, that case does not deal with the facial invalidity of an ordinance or statute. The opinion notes and appears to accept the testimony of the plaintiff's expert that if the challenged ordinance was valid, the land within the airport zones would be of "only nominal" value; in other words, the ordinance was voided, not for facial invalidity, but because the court found that its effect was to deprive the property within the zones of all value. Yara Engineering is therefore no support for the contention that the Air Safety and Zoning Act of 1983 is unconstitutional on its face.
We concede that if a property is potentially usable for an economic purpose and nothing about the property itself would make its use dangerous, zoning any substantial part of it into complete inutility without compensation would be unconstitutional. Lucas v. South Carolina Coastal Council, 505 U.S. ___, ___-___, 112 S.Ct. 2886, 2899-900, 120 L.Ed.2d 798, 820 (1992) (coastal zone building permit statute which prevented landowner from *305 erecting any permanent habitable structure on his property was unconstitutional if the property would otherwise have been usable); Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n., 98 N.J. 258, 263-64, 486 A.2d 330 (1985) (moratorium on all building would be a taking if of substantial duration); (AMG Assocs. v. Township of Springfield, 65 N.J. 101, 111-13, 319 A.2d 705 (1974) (zoning ordinance which split two lots, rendering rear portions unusable is unconstitutional). However, the State may constitutionally impose very substantial zoning and other restrictions on the use of property in order to advance legitimate public interests without being obligated to provide compensation. See, e.g., Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 485, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472, 488 (1987) (requiring mining companies to protect surface areas against subsidence); Gardner v. New Jersey Pinelands Comm'n., 125 N.J. 193, 210-16, 593 A.2d 251 (1991) (restricting residential development to one home on a forty-acre tract). "Whether such restrictions upon the development of land ... constitute a compensable taking usually turns on the particular facts of each case." Schiavone, supra, 98 N.J. at 264, 486 A.2d 330.
In the present case, there is nothing in the provisions of the Air Safety and Hazardous Zoning Act which makes its enactment tantamount to a taking. As the United States Supreme Court pointed out in Keystone, supra, 480 U.S. 470, 494, 107 S.Ct. 1232, 1246, 94 L.Ed.2d 472, 494, there is "an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation." Quoting from its decision in Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 295-96, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1, 28 (1981) (which quoted Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 111-12 (1980)), the Court continued:
The test to be applied in considering this facial challenge is fairly straightforward. A statute regulating the uses that can be made of property effects a taking if it `denies an owner economically viable use of his land....'

*306 [Keystone, supra, 480 U.S. at 495, 107 S.Ct. at 1247, 94 L.Ed.2d at 495.]
Plaintiffs point to N.J.S.A. 6:1-80, Legislative findings and declarations, as a provision which "denies an owner economically viable use of his land." That section declares that "the creation or establishment of an airport hazard is a public nuisance and an injury to the community served by the airport in question," and that "the prevention of the creation or establishment of airport hazards should be accomplished, to the extent legally possible, by the exercise of the police power of the State, without compensation." Plaintiffs argue that if we read that declaration together with the statutory definitions of an "airport hazard" and an "airport safety zone," we will discern that the statute purports to authorize the uncompensated removal of any tree or structure in the vicinity of an airport as a public nuisance.
We do not agree that this tortured construction is a reasonable reading of the statute. First of all, the Commissioner of Transportation, who must issue regulations to "specify permitted and prohibited land uses ... within airport safety zones," N.J.S.A. 6:1-84, may not "require the removal, lowering or other change or alteration of any structure or tree not conforming to the standard when adopted or amended, or otherwise interfere with the continuance of any nonconforming use, except" by condemnation. N.J.S.A. 6:1-85. Secondly, the only areas on which substantially no new trees or structures will be permitted are the eight-acre clear zones at each end of an airport runway. The record submitted to us does not indicate how many of these clear zones are located entirely or in substantial part within the boundaries of an airport, but presumably most or many clear zones are so located, and lawns and gardens appurtenant to residences are permitted within a clear zone. Thirdly, N.J.S.A. 6:1-88 assures by its express terms that "to remove, lower, or otherwise terminate a nonconforming use," or to provide other "necessary protection from an airport hazard" which cannot constitutionally be provided by zoning regulations, the Commissioner of Transportation may acquire property by purchase or condemnation. In the light of these provisions allowing substantial use of the entire area in the *307 vicinity of an airport except the clear zones, prohibiting the termination of nonconforming uses, and providing for condemnation where adequate protection cannot be provided by zoning regulation, there is no basis for plaintiffs' contention that the Air Safety and Hazardous Zoning Act of 1983 is facially unconstitutional.

-III-

Constitutionality of Air Safety and Hazardous Zoning Act of 1983 as Applied
The plaintiffs and the Department of Transportation seem to agree that the Act will not be enforceable until the affected municipalities amend their zoning ordinances to incorporate the standards promulgated by the Commissioner of Transportation pursuant to N.J.S.A. 6:1-84 and -85. The Department's brief tells us that these standards have not yet been promulgated in their final form. If the failure of the Department and of the municipalities to fulfill their responsibilities made it impossible for us to determine how the Act will affect the plaintiffs' properties, that would be a reason why we could not decide its constitutionality as applied. If that is the case, plaintiffs have the option to proceed by action in lieu of prerogative writs to compel the State and local agencies to act. However, the parties have not adequately briefed whether the State requires municipal action to make the Act enforceable, and the Department has not told us what additional regulations the Commissioner considers necessary in addition to those which he has already promulgated. Our affirmance of the Law Division's ruling that plaintiffs' challenge to the Act as applied is premature is therefore not based on the municipalities' failure to adopt ordinances or the Commissioner's failure to promulgate additional standards.
We affirm the ruling dismissing plaintiffs' challenge to the Act as applied because the plaintiffs did not supply either the Law Division or our court with the basic, relevant facts which are within their possession or capacity to acquire. It would have been *308 a relatively simple matter to present plot plans which show where each of plaintiffs' properties is located in relation to the airport hazard zones, the runway zones, the runway end zones and the clear zones plotted in accordance with the Commissioner's regulations. In their motions for or against summary judgment, plaintiffs could readily have informed the court by affidavits, and perhaps by photographs, what the present uses were of each of their properties. By affidavits of competent experts, plaintiffs could have explained what present uses each of their properties were reasonably capable of and how, if at all, the Act and the regulations promulgated under it affect their properties. None of this has been done. Perhaps even if all of this information had been provided, the Department would still be correct in arguing that none of the plaintiffs can have suffered a taking until they have first applied to the Commissioner of Transportation for a permit and their application has been denied. But in the present posture of the case, there is no need to face that issue because the factual record presented to us consists only of the pleadings. They completely fail to allege the material facts with the specificity that would be required in order for us to consider an attack on the constitutionality of the Air Safety and Hazardous Zoning Act of 1983 as applied.

-IV-

Constitutionality of New Jersey Airport Safety Act of 1983
The Airport Safety Act of 1983, N.J.S.A. 6:1-89 to -97, creates a fund for the maintenance and upkeep of public-use airports in New Jersey by imposing a "two cent per gallon tax on fuel distributed to general aviation airports." N.J.S.A. 6:1-90b. Other sections of the Act provide for the creation of an airport safety fund, N.J.S.A. 6:1-92; authorize the Commissioner of Transportation to provide assistance to general aviation airports for specified purposes, N.J.S.A. 6:1-93; and specify the qualifications for eligibility to receive assistance from the airport safety fund, N.J.S.A. 6:1-94. N.J.S.A. 6:1-95 authorizes the Commissioner to

*309 acquire airports or lands or rights therein, including aviation easements necessary for clear zones or clear areas, by gift, devise or purchase, when it is deemed to be necessary for the safe operation of the airport and the general public safety or necessary for the continued operations of an airport which is deemed to be necessary for a safe and efficient air transportation system in the State.
Plaintiffs' arguments against the constitutionality of this statute are that it permits condemnation and authorizes donations for the benefit of private interests. The New Jersey Constitution forbids both practices:
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.
[N.J. Const., art. 8, § 3, ¶ 3.]
Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners.

[N.J. Const., art. 1, ¶ 20.]
In Roe v. Kervick, 42 N.J. 191, 206-07, 199 A.2d 834 (1964), the Court explained the origin and purpose of the donation clause as follows:
Historically, the forces which motivated the constitutional prohibitions recited above, in this and most states of the Union, are clear. During the nineteenth century states and their political subdivisions frequently undertook to encourage the development of railroads by furnishing financial aid. Such assistance was in the form of direct loans or gifts of public money or property, or by bond issues, or subscription to stock of the companies. Many abuses followed in the wake of such practices to the serious detriment of the taxpayer....
....
The strictures of Article VIII, which were adopted in 1875, were simply the retreat to a fundamental doctrine of government, i.e., that public money should be raised and used only for public purposes. The article brought the doctrine into the organic law and thus established as basic policy a prohibition against lending the credit of the State directly or indirectly, or loaning, giving or donating its money or property or that of its subdivisions to or for the use of an individual, association or corporation for private purposes.
In Davidson Bros. v. D. Katz & Sons, 121 N.J. 196, 216, 579 A.2d 288 (1990), the Court applied the tests established by Roe v. Kervick, supra, to determine whether an expenditure of public *310 funds is a prohibited donation. Those tests are, first, whether the legislative provision of financial aid is for a public purpose, and, secondly, whether the means are consonant with that purpose. In view of those tests, the Court held in Davidson Bros. that, although the record was not sufficiently clear to decide the issue, what was in effect the donation of public funds to a private supermarket to attract it to an inner city area might be able to pass muster. In Roe v. Kervick, supra, the court held that loans of public funds to private entities to finance private for-profit redevelopment projects in order to alleviate unemployment was constitutional. On the other hand, the Court has held that the lease of public property to a veterans' association for one dollar a year was a constitutionally prohibited gift. Borough of Rockaway v. Rockden American Legion Post No. 175, 39 N.J. 504, 506, 189 A.2d 212 (1963).
The New Jersey Airport Safety Act of 1983 confers broad authority on the Commissioner of Transportation to provide assistance to publicly and privately owned, unrestricted, public use airports. N.J.S.A. 6:1-93. The language conferring that authority is so general that, if it were understood literally, it might be read to permit unconstitutional donations. But plaintiffs do not point to any action under the Act which they contend has been an unconstitutional donation, and we decline to interpret it to authorize such an action. Riggs v. Township of Long Beach, 109 N.J. 601, 610-11, 538 A.2d 808 (1988); In re Board of Educ. of Boonton, 99 N.J. 523, 539, 494 A.2d 279 (1985), cert. denied, 475 U.S. 1072, 106 S.Ct. 1388, 89 L.Ed.2d 613 (1986).
The eminent domain clause of our Constitution contemplates that the Legislature may authorize both public and private entities to acquire property by condemnation, provided that the acquisition is for a public purpose. See New Jersey Housing & Mortgage Fin. Agency v. Moses, 215 N.J. Super. 318, 326, 521 A.2d 1307 (App.Div.), certif. denied, 107 N.J. 638, 527 A.2d 460 (1987) (condemnation of land for a privately owned shopping center did not violate eminent domain clause where condemnation would serve public purpose of providing supplies *311 and services for residents of publicly financed housing projects in the area). The Legislature was certainly entitled to conclude, as it did, that condemnation of property for an airport was for a public purpose. Whelan v. New Jersey Power & Light Co., 45 N.J. 237, 253, 212 A.2d 136 (1965); State ex rel. McLean v. Lanza, 48 N.J. Super. 362, 370, 137 A.2d 622 (Law Div. 1957), aff'd, 27 N.J. 516, 143 A.2d 571 (1958), appeal dismissed, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350, reh'g denied, 359 U.S. 932, 79 S.Ct. 606, 3 L.Ed.2d 634 (1959). Plaintiffs do not point to any exercise of the eminent domain power under the New Jersey Airport Safety Act of 1983 which was for a non-public purpose. Their challenge to the eminent domain provision of the Act lacks any factual foundation, and we decline to follow their speculations.
The judgment appealed from is therefore affirmed, but neither this decision nor the judgment appealed from shall bar any suit seeking a remedy for any injury alleged to have resulted from the application of the statutes or regulations considered herein to specific properties.
NOTES
[1] Prior to amendments which become effective on July 16, 1992, these Acts were known as the "Air Safety and Hazardous Zoning Act of 1983" and the "New Jersey Airport Safety Act of 1983," respectively. The judgment from which plaintiffs have appealed was entered January 25, 1993. We have referred to the text of the Acts as amended.
[2] Prior to its July 1992 amendment, the Air Safety and Hazardous Zoning Act used the term "airport hazard area" as the designation for what is now referred to as an "airport safety zone." Unlike the Act, however, the regulations were not similarly amended.