191 N.J. Super. 627 (1983)
468 A.2d 742
NEW JERSEY SHORE BUILDERS ASSOCIATION, PLAINTIFF,
v.
THE TOWNSHIP COMMITTEE OF TOWNSHIP OF DOVER, ET AL., DEFENDANTS.
Superior Court of New Jersey, Ocean County Law Division.
Decided October 4, 1983.
*628 Francis X. Crahay for plaintiff (Giordano, Halleran & Crahay, attorneys).
James E. Madden for defendants.
SERPENTELLI, J.S.C.
Plaintiff brings this action to challenge the validity of a moratorium imposed by defendant on the construction of multifamily dwelling units or on the conversion of motels into condominium units in the so-called barrier island section of the township.
The moratorium ordinance precludes the issuance of building permits for such units for a period of 180 days during which time a study commission is to report to the township committee its survey of the adequacy of the public water supply. The preamble of the ordinance rests authority for its adoption on N.J.S.A. 40:48-2 which delegates to the municipality the power to act for the preservation of the health, safety and welfare of its inhabitants. The legislation allegedly was spawned by citizens' complaints of serious water pressure problems and the questioned adequacy of water for fire fighting.
The court has analyzed the judicial and legislative history relating to the use of moratoriums by municipalities. For many years prior to the adoption of the Municipal Land Use Law *629 (MLUL), N.J.S.A. 40:55D-1 et seq., the existence of municipal power to enact a reasonable moratorium on certain uses while preparing and studying a new zoning ordinance was not open to question. Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64 (1952); Deal Gardens, Inc. v. Loch Arbour Bd. of Trustees, 48 N.J. 492 (1967); Campana v. Clark Tp., 82 N.J. Super. 392 (Law Div. 1964). Just one year before the adoption of the MLUL the Appellate Division continued to recognize the municipality's authority to adopt a moratorium in appropriate circumstances. New Jersey Shore Builders' v. Ocean Tp., 128 N.J. Super. 135, 137 (App.Div. 1974). However, that court cautioned:
We add that questions surrounding moratorium ordinances appear to be recurring ones and, therefore, the limits and standards applicable to such enactments are more appropriate for legislative action than the slow development that necessarily must accompany definition on a case by case basis. [at 138]
In an apparent direct response to this call for moratorium legislation and the known concern of municipal practitioners, the Legislature spoke in N.J.S.A. 40:55D-90 subsection a:
The prohibition of development in order to prepare a master plan and development regulations is prohibited.
Subsection b of N.J.S.A. 40:55D-90 did permit an interim ordinance not related to the land use plan element pending the adoption of a conforming ordinance within a specified time. Regrettably, my review of the legislative history of the MLUL sheds no light as to the intent of the drafters with respect to the scope of subsection a or its relation, if any, to subsection b.
Three basic interpretations of subsection a have been suggested:
1. The subsection prohibits all zoning moratoriums.
2. The subsection prohibits only zoning moratoriums which preclude construction during the process of adoption of a master plan and development regulations. All other reasonable zoning moratoriums are permitted within the limits of case law.
3. The subsection expired with subsection b on May 31, 1979. Since N.J.S.A. 40:55D-90 is no longer in effect, we have returned to the common law which would permit reasonable zoning moratoriums in all cases subject to the limitations *630 imposed by case law. This third interpretation differs from the second in that even reasonable moratoriums imposed during the process of adoption of a master plan and development regulations would be permitted.
The first interpretation, that the statute prohibits all zoning moratoriums, results from reading into the statute its perceived intent. It has appealing simplicity. However, it has not received any express support in the cases decided since its passage.
The second interpretation, that all reasonable moratoriums are permitted except those imposed during the adoption of a master plan and development regulations, rests upon a literal reading of the statute. Arguably, it has received support in Plaza Joint Venture v. Atlantic City, 174 N.J. Super. 231 (App. Div. 1980) where the court said:
And, it is now well settled that municipalities have power to enact a reasonable moratorium on certain land uses while studying and preparing permanent regulations. [at 237]
The Appellate Division made this statement in 1980 while N.J.S.A. 40:55D-90(a) was in effect which expressly prohibited all zoning moratoriums during the process of adoption of a master plan and development regulations. Therefore, the language of the court must be reconciled to the language of the statute. The second interpretation accomplishes the reconcilation by reading the opinion to permit all reasonable moratoriums on certain uses which are not expressly precluded by the statute's literal terms.
The third interpretation, that N.J.S.A. 40:55D-90(a) is no longer in effect, evolves from the contention that subsections a and b of N.J.S.A. 40:55D-90 are not severable. They should be read to mean that a municipality which was involved in adopting a master plan and development regulations in compliance with the MLUL could not adopt a moratorium while doing so but it could adopt an interim ordinance not related to the land use element. The argument concludes that since subsection b expired by its terms on May 31, 1979, subsection a went with it thereby reinstating the common law.
*631 Pop Realty Corp. v. Springfield Tp. Bd. of Adj., 176 N.J. Super. 441 (Law Div. 1980) provides some basis for this proposition. The opinion quotes both subsections of the statute and then says:
This section was in effect in 1977 when the ordinance in question was adopted. It has not been in effect since May 31, 1979, the final date set for municipalities to implement the new Land Use Act by the adoption of zoning ordinances in accordance therewith. [at 449; emphasis supplied]
That quotation implies that subsection a expired with subsection b. However, not only is this statement dictum but also it is not clear whether by using the phrase "this section" the court meant to include both subsections a and b of section 90 or only subsection b. Moreover, in Redeb Amusement, Inc. v. Hillside Tp. 191 N.J. Super. 84 (Law Div. 1983), the same judge who authored Pop Realty Corp. seems to espouse the view that subsection a is in effect but that a limited moratorium is still sustainable. Again, his comments are dicta since in Redeb he holds that the moratorium involved  on video game establishments  is not a "zoning" moratorium under N.J.S.A. 40:55D-90, but rather a valid exercise of the police power to license businesses. Id. at 102.
I have reviewed this authority not because I feel that it is critical to the disposition of the case before me but rather to stress the need for clarification of the law and to bring the issue to the attention of those now considering amendments to the MLUL. The case before the court can be disposed of on other grounds without reaching the issue of the legal viability of the moratorium in this setting.
Assuming that a moratorium is still an allowable planning tool, it is clear that in adopting a moratorium a municipality may not act unreasonably or arbitrarily. The power to enact a moratorium is strictly limited and must be exercised with great caution. Deal Gardens, Inc. v. Loch Arbour Bd. of Trustees, supra 48 N.J. at 500. Such legislation must have a real, legitimate and substantial relationship to the objectives being sought and must accomplish its goals with due consideration of *632 all alternative methods and the rights of everyone to be affected by the ordinance. Cf. Gabe Collins Realty, Inc. v. Margate City, 112 N.J. Super. 341 (App.Div. 1970); Trombetta v. Atlantic City, 181 N.J. Super. 203 (Law Div. 1981).
Even though the presumption of validity provides a substantial burden to be overcome, when all of the evidence in this case is reviewed, there is no basis upon which the ordinance can be sustained in light of the standards articulated above. The case defendant presented had all the atmosphere of a governing body meeting. One by one the township gave the concerned residents a chance to voice their complaints to the court. Specifically, the witnesses spoke of the difficulties encountered in their homes during the hours of peak summer water usage in that resort area. Inadequate water pressure interfered with many normal domestic functions. They also expressed their fears that firefighting might be impeded by low pressure. They asserted that the problem has gotten worse in recent years. All of them felt that the increasing rate of condominium construction exacerbated the difficulties. Of course, it was necessary for the court to hear the concerns of these people and I sympathize with their plight.
The weakness of the township's position stems more from the evidence it did not present than from the evidence it did present. One would have expected that the residents' testimony would have been followed with some expert testimony as to the causes of these problems and the prospects for cure. We heard no experts from the water companies involved, the township engineers, building inspectors, zoning officers, code enforcement officers or the Bureau of Fire Prevention. In fact, the township did not produce a single expert. It might also have been expected that the court would receive testimony from members of the governing body or planning board as to the origin of the problem, the efforts to alleviate it and the perceived threat to the public welfare which allegedly justifies the ordinance. In this regard, I note that the preamble which embodies the legislative intent is vague, at best. For example, it authorizes *633 the study commission to "survey the adequacy of the public water supply" without even suggesting that the commission will identify the causes of any deficiencies and suggest solutions for any discovered. Finally, no one explained to the court the glaring failure to include commercial uses in the moratorium. For example, the ordinance did not prohibit construction of laundromats, car washes and restaurants  all of which are known to consume large quantities of water.
Turning to plaintiff's case, testimony was presented that the water pressure problems were long standing and long neglected. Furthermore, plaintiff presented testimony to support its position that the difficulties tend to be restricted to homes located at the end of side streets serviced by narrow branch mains. Plaintiff also contended that the threat of inadequate fire protection is not real. That proposition has been supported by the report of defendant's Bureau of Fire Prevention which concludes that its tests indicate no immediate problems and acceptable flows.
It is not enough to support a moratorium ordinance to say that a problem exists and some residents are complaining. The situation must be exigent, the causes must be adequately explored and it must be demonstrated that other less extreme solutions have been investigated and found to be not feasible. None of these requisite proofs is before the court. Stripped to its essentials, the ordinance is nothing more than an expedient legislative reaction to citizens' complaints.
I therefore find that even if it is assumed that the power remains to adopt a moratorium of the type here involved, the ordinance before the court is an invalid exercise of that power.