697 A.2d 957

DELAWARE BAY WATERMAN'S ASSOCIATION OF NEW JERSEY, A NON-PROFIT CORPORATION; CHARLES F. BURKE, JR., JOHN KING, FRED LAYTON, JR., KENNETH W. BAILEY, ROBERT BATEMAN, JAMES J. NASH, JEFFREY W. NACE, ALEXANDER T. OGDEN, III, AND LANCE NAYLOR, APPELLANTS, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued August 19, 1997—Decided August 20, 1997.

Before Judges KLEINER and BRAITHWAITE.

*Richard M. Hluchan* argued the cause for appellants (*Levin & Hluchan, P.C.*, and *Clement F. Lisitski, P.C.*, attorneys; *Mr. Hluchan*, of counsel and on the brief; *Richard S. Morrison*, on the brief).

*Howard Geduldig* argued the cause for respondent (*Peter Verniero*, Attorney General, attorney for respondent; *Mr. Geduldig* and *Catherine Tormey*, Deputy Attorney Generals, on the brief).

PER CURIAM.

On May 30, 1997, the Department of Environmental Protection (DEP) issued a sixty-day emergency amendment, pursuant to *N.J.S.A.* 52:14B–4(c), part of the Administrative Procedures Act

(APA). The emergency amendment created a total ban on the taking of horseshoe crabs. Then on July 29, 1997, the DEP issued another emergency amendment, extending the ban on taking horseshoe crabs for another sixty days. The appellants in this matter are commercial fishermen, who catch horseshoe crabs as part of their trade. They challenge the July 29, 1997, emergency adoption, claiming that it violates the strict dictates of New Jersey's Administrative Procedures Act, *N.J.S.A.* 52:14B.

There are two questions that must be answered in order to resolve this appeal. First, we must decide whether the July 29, 1997, emergency adoption is a new emergency or the same emergency for the purpose of the APA. We must then decide whether the dictates of the APA have been violated by the enactment of the second emergency amendment. We find that the July 29, 1997, emergency amendment is the same as the May 30, 1997, emergency amendment for the purposes of the APA. As a result, the DEP has violated *N.J.S.A.* 52:14B–4(c).

The May 30, 1997, emergency adoption, indicated below by redline, amended *N.J.A.C.* 7:25–18.16, which states, in part:

> (a) An individual shall not catch, take, or attempt to catch or take horseshoe crabs ... from any beach or shoreline or from the marine waters of this State.... Any permit issued by the Commissioner of the Department of Environmental Protection which allows the harvest or taking of horseshoe crabs from any beach or shoreline or from the marine waters of this State is suspended for 60 days as of May 30, 1997 unless the effective period of this amendment is extended by the Legislature pursuant to *N.J.S.A.* 52:14B–4(c).
>
> [*Ibid.*]

The DEP issued a Statement of Imminent Peril in which the rationale for the emergency adoption was that the decrease in the number of horseshoe crabs resulted in a decrease in horseshoe crab eggs that are available on New Jersey beaches, which, in turn "could result in a collapse of several species of shorebirds," which feed on the eggs of horseshoe crabs. This, in turn, would lead to a decrease in shorebird tourism.

On July 29, 1997, near the end of the sixty day period, the DEP filed a second emergency amendment to *N.J.A.C.* 7:25–18.16.

Additionally, the DEP instituted regular rule-making procedures to amend *N.J.A.C.* 7:25–18.16.[1] Included with the emergency amendment was another Statement of Imminent Peril, which stated, in part:

> Since May 30, 1997, experts from the Division of Fish, Game and Wildlife amassed and analyzed data from every available source around the Delaware Bay.... Statistics for the 1997 catch in New Jersey report a total catch of just under 300,000 crabs. In May alone, 200,000 of those crabs were hand harvested prior to the implementation of the ban. The resumption of trawling and dredging will undoubtedly increase the total catch for 1997 and create an emergency which can not [sic] be addressed by the adoption of a rule in the normal course to limit the catch.
>
> ....
>
> As indicated above, the potential extent of this harvest in combination with the harvest prior to the moratorium could be devastating to horseshoe crab populations. The only alternative is to adopt these measures through emergency proceedings. The Department therefore finds that it is essential to adopt the amendment using emergency procedures to protect the health and welfare of the citizens of New Jersey through the conservation of this species and the direct impact it has on New Jersey's commercial interests.

Appellants claim that the DEP circumvented the APA by issuing a second emergency amendment instead of getting approval from the Legislature to continue the first emergency amendment. Appellants filed an appeal with this court and sought, on an emergent basis, a stay pending that appeal. During oral argument on the motion for a stay, it became clear that in order to resolve this ephemeral issue, we had to accelerate the substantive appeal.

The substantive issues were before the court, and we provided both parties with the opportunity to supplement the record with any materials that they thought appropriate. Under *Rule* 2:8–3(b), this court "may summarily dispose of any appeal on its own motion at any time, and on such notice, if any, to the parties or as the court directs, provided that the merits have been briefed." *Ibid.* Without such an acceleration, in light of the normal length of

---

1 The proposed permanent amendment would limit the taking of horseshoe crabs to 100 per day by hand during May and June.

time required for the appellate process, the dispositive issue here could forever evade review.

■ The relevant part of the APA, *N.J.S.A.* 52:14B–4(c), states:

If an agency finds that an imminent peril to the public health, safety, or welfare requires adoption of a rule upon fewer than 30 days' notice and states in writing its reasons for that finding, and the Governor concurs in writing that an imminent peril exists, it may proceed without prior notice or hearing or upon any abbreviated notice and hearing that it finds practicable, to adopt the rule. *The rule shall be effective for a period of not more than 60 days unless each house of the Legislature passes a resolution concurring in its extension for a period of not more than 60 additional days.* The rule shall not be effective for more than 120 days unless repromulgated in accordance with normal rule-making procedures.

[*Ibid.* (emphasis added).]

*In re Certain Amendments,* 133 *N.J.* 206, 216, 627 *A.2d* 614 (1993), reversed an Appellate Division decision that found that the DEP had violated the emergency rule-making portion of the APA. *See also In re Certain Amendments,* 258 *N.J.Super.* 290, 609 *A.2d* 501 (1992). In that case, the DEP had issued an emergency regulation regarding the redirection of solid waste flows. The emergency regulation was not made pursuant to the emergency rule-making section of the APA. Rather, it was promulgated under the DEP's own procedures for issuing emergency orders regarding solid waste issues. 133 *N.J.* at 215, 627 *A.2d* 614. The Supreme Court found that the DEP did not have to meet the dictates of the APA emergency rule-making provision because:

DEP's primary statutory mandate, pursuant to the SWMA, is generally to direct the flow of solid-waste streams. The Legislature vested power in the DEP to deal with "one of this state's most severe problems: the rapid disappearance of available solid waste disposal facilities."

[*Id.* at 216, 627 *A.2d* 614 (quoting *A.A. Mastrangelo, Inc. v. Commissioner of Dep't of Envtl. Protection,* 90 *N.J.* 666, 671, 449 *A.2d* 516 (1982)).]

The Court found that this grant of power by the Legislature created a different avenue for issuing emergency regulations. *Ibid.* Here, there is no such additional grant of power. The rule-making must be analyzed in light of *N.J.S.A.* 52:14B–4(c).

We find that in the present case the two separate emergency amendments have the same cause, namely the shortage of horseshoe crabs, and the same result, namely the total ban on the

taking of horseshoe crabs. While the DEP offered two different reasons for the two emergency amendments, we find that the same cause and the same result makes for the same emergency. The fact that the DEP can articulate different reasons for the two amendments does not make them sufficiently different to treat them as two separate emergencies.

*N.J.S.A.* 52:14B–4(d) states, in part, "[n]o rule hereafter adopted is valid unless adopted in substantial compliance with this act." It is clear that the DEP attempted to circumvent the APA. The prudent agency action was, and is, to proceed directly to the Legislature to have them pass a resolution concurring in the agency's finding that an emergency extension is necessary. We find that the circumvention that occurred here is not in substantial compliance with the APA.

During oral argument on the motion for a stay, counsel for the DEP explained to the court that the DEP didn't think that the problem warranted requesting that the Legislature meet for a special session. We think it strange that the DEP can find that an emergency exists that places the public health safety and welfare in imminent peril yet is not worthy of seeking the necessary approval of the Legislature.

While the reduction in the numbers of horseshoe crabs appears to be a major problem, this does not obviate the need to comply with the APA. If the Legislature had intended to grant additional emergency powers to administrative agencies, it could have done so. In the absence of such power, an agency must fulfill the requirements of the APA. Clearly, the DEP can proceed with its regular rule-making function to put the proposed regulation into effect. The DEP can also request that the Legislature pass the necessary resolution for the extension of the ban on taking horseshoe crabs. In the meantime, however, the July 29, 1997, emergency adoption is invalid.

We recognize that the actions of administrative agencies are given great deference. *See, e.g., Henry v. Rahway State*

*Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980). In *Henry, supra,* the Court stated that "an appellate court will reverse the decision of the administrative agency only if it is *arbitrary, capricious* or unreasonable or it is not supported by substantial credible evidence in the record as a whole." *Ibid.* (emphasis added). We find that the DEP's actions in this case, in exercising power that it did not possess pursuant to the APA, was arbitrary and capricious.

The July 29, 1997, emergency adoption is invalid.