712 A.2d 266 (1998)
TOLL BROTHERS, INC., a Delaware Corporation, Plaintiff-Respondent,
v.
WEST WINDSOR TOWNSHIP, a Municipal Corporation of the State of New Jersey, located in Mercer County, New Jersey, Mayor and Council of West Windsor Township, Defendants-Appellants, and
West Windsor Township Planning Board, Intervenor-Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1998.
Decided June 22, 1998.
*267 Daniel S. Bernstein, Scotch Plains, for defendants-appellants West Windsor Township and Mayor and Council of West Windsor Township (Bernstein & Hoffman, attorneys; Mr. Bernstein, of counsel and on the brief).
Henry A. Hill, Princeton, for plaintiff-respondent (Hill Wallack, attorneys; Mr. Hill and Thomas F. Carroll, III, on the brief).
Gerald J. Muller, Chicago, IL, for intervenor-defendant-appellant West Windsor Township Planning Board (Miller, Porter & Muller, attorneys; Mr. Muller, of counsel and on the brief).
Roger W. Thomas, Newton, for amicus curiae New Jersey Planning Officials (Dolan and Dolan, attorneys; Donald M. Ross, on the brief).
Peter A. Buchsbaum, Woodbridge, for amici curiae the New Jersey Builders Association and the National Association of Homebuilders (Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, attorneys; Mr. Buchsbaum and Arthur M. Greenbaum, of counsel, Mr. Greenbaum and Jessica L. Kyle, on the brief).
Before Judges SHEBELL, D'ANNUNZIO and COBURN.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
West Windsor Township and the West Windsor Township Planning Board[1] appeal *268 from a judgment invalidating "Timed Growth Controls" contained in its zoning ordinance.
The township consists of twenty-seven square miles located in Mercer County. It is experiencing rapid residential development. The township's 1990 population was 16,021, almost triple its 1970 population of 6,431. Another indication of its growth is the increase in its public school population from 2,477 in 1987 to 4,488 in 1997.
The township contends that its roadway system lacks the capacity to serve the existing population and future development. To address this problem it has adopted a capital improvement program to increase roadway capacity. The time frame for completion of the program is approximately fifty years, ending in the year 2045.
As a result of the perceived inadequacies in its roadway system, and as a corollary to the capital improvement program, the township adopted "timed growth controls" as Article III of its zoning ordinance. One of the legislative findings in Article III defines their purpose. It states:
It is also necessary to control the rate of growth so that the township, county, and state have the opportunity to implement a program of road network improvements before development for which they are designed to create capacity is constructed. The most reasonable way of doing so is by deferring development until the time when road improvements designed to accommodate traffic from it are scheduled to be built and phasing development during the times scheduled for construction of such improvements.
To fulfill this purpose, the ordinance recognizes "basic rights" and "additional rights." A "basic right" is the right to develop immediately a certain percentage of the dwelling units permitted to a particular tract under the zoning ordinance. The percentage of dwelling units permitted immediately as a basic right varies within each timed growth district. There are ten such districts. The percentage of dwelling units constituting basic rights varies from twenty percent in two of the districts to fifty percent in one of the districts.
Section 22-3.1 defines "basic rights:"
The zoning rights for each lot in a timed growth district shall be divided into basic rights and additional rights. Basic rights shall constitute the percentage of the dwelling units (but not less than one unit) or nonresidential floor area permitted under the zoning. Basic rights for tracts which are zoned to include low- and moderate-income housing and basic rights for public uses shall be one hundred (100%) percent. Basic rights for all other lots shall be as follows:

 Timed Growth District Percentage of
 Zoning Rights
 1D and 2A 20%
 2B 25%
 1A & C and 2C & D 30%
 1B and 3 40%
 4 50%

Section 22-3.2 provides that "[b]asic rights shall be exercisable at any time."
Section 22-3.2.2 deals with the exercise of "additional rights." It provides, in part:
Additional Rights. Additional rights may be exercised for each property within each timed growth district only in accordance with the following:

 Timed Date When Percentage of
 Growth Additional Additional
 District Rights May Rights Which
 First Be May Be Exercised
 Exercised Per Year
 1A 2011 10%
 1B 2021 10%
 1C 2006 10%
 1D 1996 10%
 2A 1996 10%
 2B 2001 10%
 2C & D 2011 6.67%
 3 2021 10%
 4 2031 6.67%

Plaintiff in this case, Toll Brothers, Inc., is the contract purchaser of a tract in timed growth district 2D. The basic rights for that district constitute thirty percent of the permitted units under the zoning ordinance. As an example, if a tract in district 2D would yield sixty dwelling units under the zoning ordinance, the developer would have the basic right to build immediately eighteen of *269 those units, i.e., thirty percent of sixty. The developer, however, would have to defer development of the balance of its project. The right of deferred development is the "additional right."
In district 2D the developer may begin exercising its additional rights in the year 2011. Thus, in that year the developer may begin to construct the balance of the forty-two dwelling units. The ordinance, however, restricts the number of dwelling units, additional rights, which may be constructed in any year. In district 2D the developer may exercise 6.67 percent of its additional rights per year beginning in the year 2011. Thus, a developer with additional rights to forty-two additional dwelling units would be permitted to construct three units in the year 2011 and three units each year thereafter.
The ordinance gives a developer the option of limiting its development to sixty percent of the total units permitted under the zoning ordinance. If the developer accepts that option, the developer may develop sixty percent of the entire project immediately, but it gives up any additional development rights on that tract. Additionally, under Section 22-3.3b, a developer may accelerate the exercise of its additional rights "in their entirety by constructing or causing to be constructed ... all of the municipal, state, or county road improvements located within their timed growth district or outside that district but necessary to service traffic from their district...." But cf. New Jersey Builders Ass'n v. Bernards Township, 108 N.J. 223, 238, 528 A.2d 555 (1987) (holding that Municipal Land Use Law does not authorize a municipality to allocate the cost of a township-wide road construction project among new developments based on the projected theoretical impact of the new development on road use).
The ordinance also permits acceleration of the exercise of additional rights to the extent that there is road capacity available. The record contains a traffic analysis by the township which indicates that there was no road capacity available as of 1996.
Toll Brothers commenced this action to invalidate the timed growth controls. It moved for summary judgment, contending that the timed growth controls were not authorized by New Jersey's Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -92, and, in any event, that they constituted a moratorium or interim zoning prohibited by N.J.S.A. 40:55D-90 (hereinafter section 90). In a comprehensive and well-reasoned written opinion, the Law Division judge granted summary judgment to plaintiff, ruling that the MLUL does not authorize timed growth controls and that the timed growth controls constitute "a de facto moratorium" in violation of section 90.
We need only address the moratorium issue.
The Legislature adopted the MLUL in 1975, to be effective August 1, 1976. As originally enacted, the MLUL contained section 90, but the Legislature has amended it twice. Section 90 originally provided:
Moratoriums; interim zoning. a. The prohibition of development in order to prepare a master plan and development regulations is prohibited.
b. A municipality may adopt a reasonable interim zoning ordinance not related to the land use plan element of the municipal master plan without special vote as required pursuant to section 49a. of this act, pending the adoption of a new or substantially revised master plan or new or substantially revised development regulations. Such interim zoning ordinance shall not be valid for a period longer than 1 year unless extended by ordinance for a period no longer than an additional year for good cause and upon the exercise of diligence in the preparation of a master plan, development regulations or substantial revisions thereto, as the case may be.

[L. 1975, c. 291, § 77.]
In 1979 section 90 was amended by adding an additional clause validating until May 31, 1979 any ordinance extending an interim zoning ordinance if it were in effect on January 31, 1979.
In 1985, the Legislature again amended section 90. The amendment preserved subsection a., but eliminated the original subsection b. and substituted a new subsection b. Section 90 now provides:

*270 a. The prohibition of development in order to prepare a master plan and development regulations is prohibited.
b. No moratoria on applications for development or interim zoning ordinances shall be permitted except in cases where the municipality demonstrates on the basis of a written opinion by a qualified health professional that a clear imminent danger to the health of the inhabitants of the municipality exists, and in no case shall the moratorium or interim ordinance exceed a six-month term.

[L. 1985, c. 516, § 20.]
In its current form section 90b prohibits "moratoria on applications for development," and it prohibits "interim zoning ordinances." Current section 90 is more restrictive of municipal authority than original section 90 because in subsection b., it expressly prohibits "moratoria" as well as "interim zoning ordinances," in addition to the restriction contained in subsection a. Moreover, to the extent that subsection b. permits moratoria or interim ordinances, it limits them to a "six-month term" and requires that they be justified by "a clear imminent danger to the health of the inhabitants of the municipality." The issue, therefore, is whether the township's timed growth controls constitute a moratorium or interim zoning.
In construing a statute we must effectuate the Legislature's intent. Monmouth County v. Wissell, 68 N.J. 35, 43-44, 342 A.2d 199 (1975). Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness, and legislative history. Coletti v. Union County Bd. of Chosen Freeholders, 217 N.J.Super. 31, 35, 524 A.2d 1270 (App. Div.1987); Shapiro v. Essex County Bd. of Chosen Freeholders, 177 N.J.Super. 87, 92, 424 A.2d 1203 (Law Div.1980), aff'd, 183 N.J.Super. 24, 443 A.2d 219 (App.Div. 1982), aff'd, 91 N.J. 430, 453 A.2d 158 (1982).
"[W]e must first look at the evident wording of the statute to ascertain its plain meaning and intent." Renz v. Penn Cent. Corp., 87 N.J. 437, 440, 435 A.2d 540 (1981). Our duty is to apply the legislative intent as expressed in the statute's language, and we are not to presume that the Legislature intended something other than what it expressed by its plain language. In re Jamesburg High School Closing, 83 N.J. 540, 548, 416 A.2d 896 (1980); In re Howell Tp., Monmouth County, 254 N.J.Super. 411, 419, 603 A.2d 959 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991).
The MLUL does not define a moratorium. Its "ordinary and well understood meaning," Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 182, 411 A.2d 704 (1980), is "a period of permissive or obligatory delay." Webster's New International Dictionary 1593 (2d ed.1934); Black's Law Dictionary 1009 (6th ed.1990)[2]; see Delaware Bay Waterman's Ass'n v. New Jersey Dep't of Envt'l Protection, 304 N.J.Super. 20, 23, 697 A.2d 957 (App.Div.1997) (indicating that DEP characterizes its ban on the harvesting of horseshoe crabs as a "moratorium"), appeal dismissed as moot, 153 N.J. 345, 709 A.2d 192 (1998); Jersey City Redev. Agency v. Mack Properties Co., 280 N.J.Super. 553, 560, 566, 656 A.2d 35 (App.Div.1995) (describing a ban on sewer connection as a moratorium).
In Schiavone Const. Co. v. Hackensack Meadowlands Dev. Comm'n, 98 N.J. 258, 486 A.2d 330 (1985), decided prior to the 1985 amendment of section 90b, the Court addressed a Commission resolution "directing that all development applications be held in abeyance...." Id. at 261, 486 A.2d 330. The Court discussed the Commission's action, stating that "the net effect of which was to place a freeze on all land development in the covered area." Ibid. It characterized the Commission's action as a "moratorium." Id. at 262, 486 A.2d 330. The Court remanded to the Appellate Division for reconsideration because the factual assumption of the Appellate Division's decision upholding the "moratorium," i.e., that it would be of short duration, eight months, subsequently was proved to be incorrect. The moratorium actually lasted for nineteen months. Id. at 262, *271 486 A.2d 330. The Court declined, however, to address plaintiff's claim that the Commission lacked statutory authorization to impose a moratorium and that the moratorium violated section 90a. Id. at 260, 486 A.2d 330. See also New Jersey Shore Builders Ass'n v. Township Comm. of Dover, 191 N.J.Super. 627, 632-33, 468 A.2d 742 (1983) (invalidating, prior to 1985 amendment of section 90b, 180 day moratorium on issuance of building permits for multifamily dwellings, pending a report on the adequacy of the public water supply); New Jersey Shore Builders Ass'n v. Township of Ocean, 128 N.J.Super. 135, 138, 319 A.2d 255 (App.Div.) (holding, prior to the MLUL, that municipality had the power to impose a six-month moratorium on the approval of industrial development projects until enactment of a new zoning ordinance), certif. denied, 65 N.J. 292, 321 A.2d 253 (1974); Cappture Realty Corp. v. Board of Adjustment of Elmwood Park, 126 N.J.Super. 200, 213-14, 313 A.2d 624 (Law Div.1973) (upholding, prior to MLUL, a moratorium on construction in flood-prone areas), aff'd, 133 N.J.Super. 216, 336 A.2d 30 (App.Div.1975).
New Jersey Shore Builders Ass'n v. Mayor and Township of Middletown, 234 N.J.Super. 619, 561 A.2d 319 (Law Div.1989), applied the current version of section 90b. There, the municipality had imposed a six-month moratorium on major site plan and subdivision applications based on a perceived inadequacy of the municipality's water distribution system. Id. at 624, 561 A.2d 319. The court, noting that "[t]here is no longer any doubt about the power [to impose a moratorium] or the legislative intent strictly to limit the use of that power," id. at 622, 561 A.2d 319, held that the statutory predicate for a six-month moratorium, "a clear imminent danger to the health of the inhabitants of the municipality," was not supported in the record. Id. at 628, 561 A.2d 319.
In the present case, we conclude that the township's timed growth controls constitute a prohibited moratorium with regard to a developer's "additional rights." Exercise of those rights is suspended for periods measuring a year in two districts to more than ten years in other districts. Moreover, additional rights may be exercised only over a period of time from ten years to approximately fifteen years depending on the district. This secondary postponement of full enjoyment of the development rights afforded by the zoning ordinance constitutes an additional level of moratoria.
Intervenor West Windsor Township Planning Board contends that section 90b prohibits only moratoria on "development applications." It argues that the township's ordinance does not prohibit such applications, and, therefore section 90b is not violated. We conclude that this argument is invalid and contrary to legislative intent. It offends common sense to believe that a moratorium on applications is prohibited, but a moratorium on full implementation of an approved application is valid. Cf. Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (stating that "[s]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'"); Reisman v. Great Am. Rec., Inc., 266 N.J.Super. 87, 95-96, 628 A.2d 801 (App.Div.) (observing that "statutes are to be read sensibly rather than literally" and should not be construed in a manner which would lead to unreasonable or anomalous results).
Appellants rely on decisions from other jurisdictions which have upheld ordinances imposing similar timed growth controls such as Golden v. Planning Bd. of Ramapo, 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (1972), and Construction Industry Ass'n v. City of Petaluma, 522 F.2d 897 (9th Cir. 1975), cert. denied, 424 U.S. 934, 96 S.Ct. 1148, 47 L. Ed.2d 342 (1976). Those decisions, though interesting, are not helpful because the jurisdictions did not have a statutory prohibition equivalent to section 90. Cf. New Jersey Builders Ass'n v. Bernards Township, supra, 108 N.J. at 234, 528 A.2d 555 (holding that the MLUL controls exercise of the power to regulate land use and development).
We have considered the impact on Article III's validity of the developer's option to build immediately sixty percent of its development rights. Although this option effects a de facto decrease in density, the *272 mechanism by which this is achieved is a permanent moratorium on utilization of forty percent of the development rights afforded in the ordinance. This violates section 90b.
We note for purposes of completeness that on May 18, 1998, ten days before this appeal was argued, the township amended its ordinance to decrease the allowable density in certain residential districts by increasing the minimum lot sizes. The township described the impact of the amendment, effective on June 8, 1998, in the notice it sent to landowners, as required in N.J.S.A. 40:55D-62.1. The notice stated, in part:
[It] changes the maximum permitted density of certain residential districts to be consistent with what they were before Judge Feinberg overturned the Timed Growth Ordinance, as follows:
R-1, rural density residential, shall be changed from one dwelling unit per two acres to one dwelling unit per 3 and 1/3 acres, and the greater portion of R-2, low density residential (see map), shall be renamed R-1A and shall be changed from one dwelling unit per acre to one dwelling unit per 1 and 2/3 acres. This ordinance will apply to existing properties within these zones as well as to applications for site plan and subdivision approval.
The amendment did not expressly eliminate Article III. Two days before oral argument, counsel for plaintiff requested an adjournment to afford the parties an opportunity to brief "issues" arising out of the amendment. We denied the application. Article III is a discrete element of the zoning ordinance, and its validity is capable of adjudication without regard to the amendment. We, of course, do not rule on the validity of the amendment.
The judgment invalidating Article III is affirmed on the ground that it violated section 90b.
NOTES
[1] Separate notices of appeal were filed, which we consolidated.
[2] "Moratorium" has also been defined as "a suspension of activity; a temporary ban on the use or production of something." Webster's New International Dictionary 1469 (3d ed.1993).